UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH MITCHELL,<br><br>                Plaintiff,<br><br>-against-<br><br>DET. BRIANNA CONSTANTINO, Shield #2076, in her individual capacity,<br><br>                Defendant. | **COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiff Keith Mitchell, by and through his attorneys, Emery Celli Brinckerhoff & Abady LLP, for his Complaint alleges as follows:

## NATURE OF THE ACTION

1. Keith Mitchell's gnarled right hand is missing two fingers and does not function normally. Its condition would be obvious to anyone who handcuffs or fingerprints him.

2. Given Mr. Mitchell's physical condition, any reasonable detective would know that Mr. Mitchell could not carry a sixty-pound bag and menacingly swing a copper pipe with his right hand. No reasonable detective would have charged Mr. Mitchell with that crime, particularly where the *only* evidence against him was a grossly defective eyewitness identification. The complaining witness identified Mr. Mitchell only after being told that Mr. Mitchell was the "right" choice, that "his brain was not wrong" and that "it was pointing him toward" Mr. Mitchell "for a reason." Even after the initial identification, the complaining witness remained unsure, and he was again told he was "right" that Mr. Mitchell was the criminal.

1

3. Alas, Brianna Constantino is not a reasonable detective. Her "investigation" of this case consisted of instructing a witness to pluck a suspect from a random set of photographs, withholding exculpatory evidence, and lying to the prosecutor and the court.

4. Det. Constantino tainted the photo array by telling the complaining witness he was "right" and that "his brain" was "pointing" him toward Mr. Mitchell "for a reason." She lied to the prosecutor and withheld documentary evidence about the array, claiming that the witness saw ten photos and spontaneously identified Mr. Mitchell. In truth, the witness saw *106* photos and identified Mr. Mitchell only after being told he was the right choice.

5. Det. Constantino knew Mr. Mitchell was not physically capable of committing the crime described by the complaining witness. She saw the condition of his right hand when she and her partner arrested him, and again when she and her partner tried to fingerprint him but had trouble doing so. But she did nothing about it. She did not investigate further. Just as she lied about the circumstances of the "identification," Det. Constantino also did not tell the prosecutor about Mr. Mitchell's physical inability to have committed the crime.

6. Det. Constantino lied on the witness stand about how many photographs the complaining witness saw. She lied on the stand about the pressure she placed on the witness to select Mr. Mitchell's photo from the random array. And she lied on the stand about Mr. Mitchell's hand. She told these lies because she knew Mr. Mitchell's arrest was a bad arrest—an arrest she could never justify if she told the truth.

7. Although he was ultimately acquitted by a jury of his peers, Mr. Mitchell paid a steep price for Det. Constantino's malice and lies. The price was two years and one month locked up at Rikers Island—773 days of stolen freedom.

## PARTIES

8. Plaintiff Keith Mitchell is a 64-year-old man who is citizen of the United States. At all relevant times, he was a resident of the Bronx, New York.

9. Defendant Brianna Constantino is a Detective in the New York City Police Department ("NYPD") who formerly held the rank of Police Officer. At all relevant times, she was acting within the scope of her employment with the NYPD and under color of state law. She is sued in her individual capacity.

## JURISDICTION AND VENUE

10. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988.

11. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

12. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the acts complained of occurred in the Southern District of New York.

## JURY DEMAND

13. Plaintiff demands trial by jury.

## FACTUAL ALLEGATIONS

*Someone Breaks Into a House and Swings a Pipe at Primitivo Cuautle*

14. On the night of August 26, 2014, two men broke into a house under construction at 533 East 187th Street in the Bronx. They took construction tools and copper pipes that were inside the house.

15. Primitivo Cuautle, a local handyman paid by the house's owner to keep an eye on it, saw the men outside the house. The men were carrying large, heavy bags full of the

pipes and tools in both hands.  When Mr. Cuautle tried to stop the men, one of them grabbed a big copper pipe from a bag, swung it at Mr. Cuautle with his right hand, and verbally threatened Mr. Cuautle.  The men dropped the bags and ran off.

    16. Neither of the two men was Keith Mitchell.

***Det. Constantino Conducts Virtually No Investigation***

    17. On or about the next day, the case was assigned to Det. Constantino as the lead investigator.  She went to the scene and spoke to the owner of the house.  She also spoke to Mr. Cuautle by phone.

    18. Although an Evidence Collection Team ("ECT") was present at the scene, Det. Constantino did not direct the ECT to collect any evidence.  She did not instruct the ECT to dust for fingerprints or swab for DNA.  The heavy bags of large pipes and tools that the burglars had tried to take were still at the scene, sitting on the ground.  So was other construction equipment and a vacuum cleaner.  Det. Constantino did not order the ECT to voucher any of these items as evidence.

    19. Acting independently without Det. Constantino's involvement, the ECT lifted a palm print from the window of the house.  It belonged to someone other than Mr. Mitchell.  Mr. Mitchell and the man whose palm print was found in the house do not know each other.

***Det. Constantino Conducts an Unconstitutionally Suggestive Photo Array***

    20. Ten days after the incident, on September 5, 2014, Det. Constantino met with Mr. Cuautle in person for the first time.  Mr. Cuautle said that the man who swung a pipe at him with his right hand was an older, heavyset black man.  Mr. Cuautle did not get a good look at the other man.

21. Det. Constantino created a random photo array of people who matched this general description. Mr. Cuautle viewed 96 photos in the array, including Mr. Mitchell's photo twice. Mr. Cuautle looked through the photos on a computer in Det. Constantino's office. Det. Constantino was present, sitting at her desk about twelve feet behind Mr. Cuautle.

22. The first time Mr. Mitchell's photo appeared in the array, Mr. Cuautle did not say anything.

23. The second time Mr. Mitchell's photograph came up in the array, Mr. Cuautle called Det. Constantino over. He said his brain was telling him something about the photograph. Det. Constantino said that Mr. Cuautle's brain was not wrong.

24. Mr. Cuautle denied that the man in the photograph was the right person. He was unsure. Det. Constantino told him again that his brain was pointing him toward Mr. Mitchell for a reason. Det. Constantino told him that he was right.

25. But Mr. Cuautle kept saying no, refusing to make an identification because he was not sure.

26. Det. Constantino told Mr. Cuautle to relax and take a break. She turned off the computer. When she turned it back on, she told Mr. Cuautle to go through the photos again.

27. Mr. Cuautle went through ten more photos. When he came across Mr. Mitchell's photo again, he was still unsure. Det. Constantino again told him he was right. Only then, after repeatedly being told by a detective that he had chosen the "right" person notwithstanding his expressed doubts, did Mr. Cuautle "identify" Mr. Mitchell as the person who had robbed the house and swung a pipe at him.

*Det. Constantino Falsely Arrests Mr. Mitchell Without Probable Cause*

28. Three days after the photo array, on September 8, 2014, Det. Constantino went to Mr. Mitchell's residence and arrested him. Det. Constantino did not search Mr. Mitchell's home. No evidence was recovered from Mr. Mitchell. No evidence existed to connect Mr. Mitchell to the crime or the crime scene.

29. Det. Constantino noticed the condition of Mr. Mitchell's right hand when she handcuffed him. It would have been impossible not to notice. Mr. Mitchell's right hand was missing two fingers in their entirety. A third finger was permanently curled up. The remaining two fingers did not function normally and were difficult to manipulate.

30. Det. Constantino put Mr. Mitchell in a patrol car and brought him to the precinct. He arrived at the precinct around 10:30 a.m.

31. Det. Constantino and her partner fingerprinted Mr. Mitchell at the precinct. Mr. Mitchell's right hand could not be fingerprinted normally because it was missing fingers and curled up. Det. Constantino and her partner had difficulty getting Mr. Mitchell's hand to open up to roll it for prints. Det. Constantino asked other officers what to do. If Det. Constantino had somehow failed to notice the condition of Mr. Mitchell's hand when handcuffing him, she surely noticed it then.

32. At about 6:00 p.m. on September 8—roughly eight hours after his arrest—Det. Constantino placed Mr. Mitchell in a lineup at the precinct.

33. At the time, Mr. Mitchell was 61 years old and 5'10" tall, and he weighed about 210 pounds. In violation of the lineup procedures in the NYPD Patrol Guide, none of the other people in the lineup resembled Mr. Mitchell in age, stature, or build. None of the "fillers" were over age 42 even though Mr. Cuautle said his assailant was an older man. Even though Mr.

Cuautle said his assailant was heavyset, only one "filler" weighed more than 161 pounds—but he was *28 years old*.

34. After seeing Mr. Mitchell's photo three times, twice being told by the investigating Detective that he was "right" that Mr. Mitchell was the person who attacked him, and seeing Mr. Mitchell in the lineup surrounded by people who did not match the general appearance of the person who committed the crime, Mr. Cuautle picked Mr. Mitchell out of the lineup.

*Det. Constantino Swears Out a False Criminal Complaint, Lies to the Prosecutor, and Conceals Material Exculpatory Evidence*

35. Late that night, at 12:35 a.m. on September 9, Det. Constantino wrote and signed a criminal complaint against Mr. Mitchell. She alleged that another man "handed [a] bag of copper pipes to Mr. Mitchell," who "grabbed one of said copper pipes and swung said copper pipe at [Mr. Cuautle]."

36. The complaint charged Mr. Mitchell with first-degree burglary, two counts of second-degree burglary, third degree burglary, menacing in the second degree, petit larceny, criminal possession of stolen property, criminal trespass, and trespass—four felonies, four misdemeanors, and a violation. Mr. Mitchell faced twenty-five years in prison if convicted on these charges.

37. Mr. Mitchell was processed through Central Booking, arraigned on Det. Constantino's complaint, and held on $100,000 bail. Unable to afford bail, he was sent to Rikers Island, where he remained for over two years.

38. On September 24, 2014, a grand jury indicted Mr. Mitchell on seven counts: robbery in the first, second, and third degrees; burglary in the first, second, and third

7

degrees; and petit larceny.

39. Det. Constantino did not tell the prosecutor about the physical condition of Mr. Mitchell's hand, which made him incapable of committing the crime as alleged. Det. Constantino did not tell the prosecutor that Mr. Cuautle had seen Mr. Mitchell's photograph three times before identifying him. She did not tell the prosecutor that Mr. Cuautle had hesitated. Nor did she tell the prosecutor that she told Mr. Cuautle that Mr. Mitchell was the right person, that his brain was pointing him toward Mr. Mitchell for a reason, and that his brain was not wrong. She did not tell the prosecutor that Mr. Cuautle was still unsure of the identification even after he made it, and that she told him again that he was "right" to choose Mr. Mitchell. Each of these facts was material and exculpatory.

40. Not only did Det. Constantino conceal all of these material exculpatory facts, but she also affirmatively misled the prosecutor. She falsely represented to the prosecutor that Mr. Cuautle had looked at a total of ten photos, including only one photo of Mr. Mitchell, and spontaneously identified Mr. Mitchell.

41. Det. Constantino created materially false and misleading documentary evidence. She created a report containing images from the photo array which falsely showed that Mr. Cuautle had only viewed ten images over the course of four minutes and positively identified Mr. Mitchell the first time he saw his photo. She gave this printout to the prosecutor.

42. Det. Constantino's withholding of exculpatory evidence, misleading of the prosecutor, and creation of false and misleading evidence tainted the grand jury proceedings.

### *Det. Constantino Lies at the Suppression Hearing*

43. At a suppression hearing on January 22, 2016, Det. Constantino lied about

the photo array.[1]  She falsely testified as follows:

> Q: What was it you told him when he [went] to look at the photographs?
>
> A: I gave him instructions.  You press—he could either use the mouse, and click next, or back, or he could type the word, end, next picture and letter B will take you back.  I said there are photos, numbers underneath the photos, and I gave him a piece of paper and pad.
>
> If there was anyone he needed to go back to, he could just write the number down.  I then told him if he saw the person whom he got into a physical altercation with, to call my name, and I'll stop and come over.
>
> . . . .
>
> Q: Did the complainant, at one point, pick someone out?
>
> A: Yes.
>
> Q: Do you know how many pictures he had gone through before picking someone out?
>
> A: I believe he stopped at number ten.
>
> Q: And how long would you say that was?
>
> A: Um, anywhere from a minute to two minutes.
>
> Q: And what, if anything did he say, when he picked out the photograph?
>
> . . . .
>
> A: He said "This is him.  This is him."

44. On cross-examination, Det. Constantino repeated the lie that Mr. Cuautle looked at only ten photos for a few seconds and spontaneously identified Mr. Mitchell:

> Q: In this case, when Mr. Cuautle looked at the photos, he looked at ten photos total, during his viewing on September 5th?

---

[1] Plaintiff is not bringing any claims as a result of Det. Constantino's testimony, for which she would likely claim absolute immunity, but includes these allegations because the false testimony illustrates her lack of probable cause—and her knowledge that she lacked probable cause—to arrest and prosecute Mr. Mitchell.

9

> A: Correct.
>
> . . . .
>
> Q: And when Mr. Cuautle got to the tenth photo on the screen, it was on the screen continuously, he never went back?
>
> A: No.
>
> Q: And he also, after getting to the tenth photo, didn't go forward to look at any other photos, right?
>
> A: Correct.

***During Trial, the Prosecutor Learns What Det. Constantino Had Concealed***

45. During the trial on October 5, 2016—after opening statements had been completed and a witness had already testified—the prosecutor discussed the photo array with Mr. Cuautle for the first time. Mr. Cuautle told the prosecutor what really happened, and the prosecutor learned that Det. Constantino had misled her.

46. The prosecutor confronted Det. Constantino. Only then—on October 6, 2016, in the middle of trial—did Det. Constantino create a second report showing 96 additional photos that Mr. Cuautle had seen before he made his identification, including two additional photos of Mr. Mitchell, for a total of three. Despite having a legal obligation to disclose those photographs, Det. Constantino withheld them from the prosecutor until the middle of trial, and would never have produced them unless confronted about their absence.

47. At trial, Mr. Cuautle testified about the way the photo array was really conducted. Mr. Cuautle explained that, when he saw Mr. Mitchell's photo for the second time, he called over Det. Constantino. This is what followed:

> Q: [Y]ou told her that your brain was telling you something about photo 11?
>
> A: Yes.

Q: And the detective told you your brain was right?

A: Yeah.

Q: She said your brain was pointing you at the photo for a reason?

A: Yes.

Q: And she told you to relax?

A: Yes.

Q: And she made you feel better?

A: Yeah, I relaxed.

. . . .

Q: Well, she told you to take a break from looking at the photos?

A: Yes.

Q: And to look at them again?

A: Yes.

Q: So you went through the photos again?

A: Yes, I don't know why.

Q: Well, this was your third time seeing photograph Number 11?

A: Yes.

Q: And each time you saw this person you became more convinced that it was the person from August the 26th?

. . .

A: Yes, I was getting convinced.

Q: And you picked photograph Number 11?

A: Yes.

Q: You were still not sure that photograph was the man from that night?

A: No, I wasn't sure.

>. . .
>
>Q: But again, the detective told you that you were right?
>
>A: Yes, for what I was feeling.

***Det. Constantino Again Lies on the Stand, and the Jury Acquits Mr. Mitchell***

48. In a highly unusual move, the prosecution did not call Det. Constantino, the lead investigator of the burglary, as a witness in its case-in-chief.

49. Det. Constantino was notified to come to court on October 11, 2016 to testify for the defense, but she failed to appear.

50. The defense called Det. Constantino as a witness at trial on October 12, 2016. She claimed to have no recollection of Mr. Cuautle looking at the 96 photographs she had concealed from the prosecutor. She claimed to remember nothing about what Mr. Cuautle said to her while looking at those photographs, or about what she said to him. She claimed not to remember any of her conversations with the prosecutor about the case.

51. Det. Constantino also claimed that she did not recall whether Mr. Mitchell had any missing fingers on his hand. She claimed that she did not remember having to uncurl his right hand in an attempt to fingerprint it.

52. Even the trial judge—in front of the jury—could hardly contain his astonishment at Det. Constantino's misconduct:

>THE COURT: Before the redirect just for clarification, on cross-examination, detective, correct me if I'm wrong, you stated that you did not mention to the Assistant District Attorney that the eyewitness had looked at the 96 photographs in Exhibit A for the defense?
>
>THE WITNESS: That's correct.
>
>THE COURT: You didn't think it was important to let the prosecutor know that the witness could not identify

|               |                                                                                                                                                                                                                 |
| ------------- | --------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|               | the defendant's photo which appeared twice in Exhibit A, but then was able to identify a photo 17 minutes later[?]                                                                                              |
| THE WITNESS:  | I'm not sure I understand what you are asking.                                                                                                                                                                  |
| . . . .       |                                                                                                                                                                                                                 |
| THE COURT:    | And you are telling me – strike that.                                                                                                                                                                           |
|               | Your testimony was that you don't recall if the defendant had one or two fingers missing from his right hand, even though you or your partner put the handcuffs on?                                             |
| THE WITNESS:  | Correct.                                                                                                                                                                                                        |

53. The jury acquitted Mr. Mitchell of all charges. Mr. Mitchell was released from custody on October 19, 2016.

*Mr. Mitchell Loses More Than Two Years of His Liberty*

54. Mr. Mitchell was deprived of his liberty and held in captivity from the time he was arrested until he was acquitted—from September 8, 2014 to October 19, 2016, more than two years and one month. Nearly all of that time was spent at Rikers Island.

55. As a result of being in jail for over two years fearing the possibility of being sent to prison for the rest of his life for a crime he did not commit, Mr. Mitchell suffered damages, including pain and suffering.

**FIRST CAUSE OF ACTION**
42 U.S.C. § 1983 – False Arrest & False Imprisonment

56. Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

57. Defendant wrongfully and illegally arrested Plaintiff and falsely charged Plaintiff with numerous crimes.

58. The wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Plaintiff was carried out without any basis, without Plaintiff's consent, and without probable cause or reasonable suspicion.

59. Defendant knew she lacked probable cause to arrest Plaintiff because the condition of his hand made him physically unable to commit the crime, the complaining witness's identification was too suggestive to be reliable, and there was no other evidence against Plaintiff.

60. No reasonable detective would have believed there was probable cause to arrest Plaintiff under these circumstances.

61. At all relevant times, Defendant acted forcibly in apprehending and arresting Plaintiff.

62. Throughout this period, Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, and falsely charged. At all times, the unlawful, wrongful, and false arrest of Plaintiff was without basis and without probable cause or reasonable suspicion.

63. All this occurred without any fault or provocation on the part of Plaintiff.

64. Defendant acted under pretense and color of state law. Said acts by Defendant were beyond the scope of her jurisdiction, without authority of law, and in abuse of her powers, and Defendant acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendment to the United States Constitution.

65. Defendant's conduct was willful, wanton, and reckless.

66. As a direct and proximate result of the misconduct and abuse of authority

detailed above, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
42 U.S.C. § 1983 – Malicious Prosecution

67. Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

68. Defendant maliciously and without justification commenced criminal proceedings against Plaintiff.

69. Defendant charged Plaintiff with crimes falsely, maliciously, in bad faith, and without probable cause.

70. Defendant knew she lacked probable cause to prosecute Plaintiff because the condition of his hand made him physically unable to commit the crime, the complaining witness's identification was too suggestive to be reliable, and there was no other evidence against Plaintiff.

71. No reasonable detective would have believed there was probable cause to prosecute Plaintiff under these circumstances.

72. After proceedings in criminal court in which Plaintiff was forced to defend himself, all charges against Plaintiff were terminated in Plaintiff's favor.

73. Defendant acted under pretense and color of state law. Said acts by Defendant were beyond the scope of her jurisdiction, without authority of law, and in abuse of her powers, and Defendant acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendment to the United States Constitution.

74. Defendant's conduct was willful, wanton, and reckless.

75. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
42 U.S.C. § 1983 – Denial of Due Process – Fabrication of Evidence

76. Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

77. Defendant initiated, or caused the initiation of, criminal proceedings against Plaintiff.

78. Defendant created false information and fabricated evidence likely to influence the jury, including the false photo array report showing that the complaining witness looked only at ten photos and identified Plaintiff the first time he saw Plaintiff's photograph.

79. Defendant's fabrication of evidence proximately caused Plaintiff's detention and loss of liberty.

80. Defendant acted under pretense and color of state law. Said acts by Defendant were beyond the scope of her jurisdiction, without authority of law, and in abuse of her powers, and Defendant acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendment to the United States Constitution.

81. Defendant's conduct was willful, wanton, and reckless.

82. As a direct and proximate result of Defendant's fabrication of evidence, Plaintiff sustained the damages hereinbefore alleged.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant as follows:

    a.    Compensatory damages in an amount to be determined at trial;

    b.    Punitive damages in an amount to be determined at trial;

    c.    Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

    d.    Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       May 4, 2017

EMERY CELLI BRINCKERHOFF & ABADY LLP

By: _____
Debra L. Greenberger
Douglas E. Lieb
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000
*Attorneys for Plaintiff*